IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| FLAKEWOOD ALAN TUCKER, III | : | CIVIL ACTION |
|---|---|---|
| | : | |
| v. | : | |
| | : | No. 09-1197 |
| THOMAS JEFFERSON UNIVERSITY | : | |

## **MEMORANDUM**

Ludwig, J.                                                                                                                                                            December 30, 2010

This is an employment discrimination case. Title VII; 42 U.S.C. § 1981. Jurisdiction is federal question. 28 U.S.C. § 1331.

According to the amended complaint, on March 23, 2007, plaintiff Flakewood Alan Tucker, an African-American, was hired by defendant Thomas Jefferson University's temporary staffing organization, JeffTemps, as an ultrasound technologist. On April 14, 2008, his employment was terminated. A female co-worker, who is white, had complained that plaintiff had again "touched" her on the back, despite her requests not to do so. This reason is characterized as "pretextual" by the amended complaint, which attributes the termination to race discrimination, in violation of Title VII and 42 U.S.C. § 1981.[1]

Following discovery, defendant moved for summary judgment. On September 17, 2010, the motion was denied without prejudice to renewal upon supplementing the record as follows: 1.

---

[1] The amended complaint includes a retaliation claim, based on defendant's post-employment conduct. However, in his response to defendant's summary judgment motion, plaintiff withdrew this claim. Plaintiff's memorandum in opposition, docket no. 27, at 10. Plaintiff's summary judgment response also does not oppose defendant's motion as to the gender discrimination claim set forth in the amended complaint. Judgment in favor of defendant will be entered on these claims.

A clear and explicit description of what is meant by plaintiff "touched her back"; and 2. A statement of what, if anything, in the Employee Handbook and Service Standards pertains to an employee's non-consensual "touching." September 17, 2010 order, docket no. 29. Thereafter, defendant supplemented the record and refiled its motion. The motion will be granted.[2]

The following facts are undisputed.[3] On March 23, 2007, plaintiff was employed as an ultrasound technologist by defendant's temporary staffing organization. Declaration of Richard Blob, Associate Administrator, Department of Radiology, ¶¶ 3-4, Exhibit A to defendant's motion; deposition testimony of plaintiff Tucker, at 22, 47. At the time of hiring, plaintiff received an Employee Handbook and defendant's "Service Standards." The latter outlines rules of behavior expected of defendant's employees. Tucker N.T., at 32-24; "Service Standards," Exhibit B. Plaintiff was aware that violation of these standards could result in termination. Tucker N.T., at 33. The standards require that employees treat each other with "respect" and expressly prohibits "sexual harassment in any form or context."[4]

---

[2] "Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the no-moving party. When the moving party has carried its burden, the nomoving party must 'set out specific facts showing a genuine issue for trial.' Unsupported assertions, conclusory allegations or mere suspicions are insufficient to overcome a motion for summary judgment." Betts v. New Castle Youth Dev. Ctr., — F.3d —, 2010 WL 3528902, * 1 (3d Cir., Sept. 13, 2010) (citations omitted). All evidence is to be viewed in the light most favorable to the nonmoving party. Id.

[3] The summary judgment record consists of the pleadings, deposition testimony, affidavits, and documents produced in the course of discovery.

[4] Service Standards: "Our co-workers are our teammates. They deserve our respect." "We will treat out patients, visitors and co-workers with sensitivity, dignity and courtesy." Exhibit B. Additionally: "Jefferson is committed to providing an academic, patient care and

On April 4, 2008, Kellie Roberts reported to Associate Administrator Richard Blob that plaintiff had previously "touched" her on her back, despite her telling him not to do so. Blob Decl., ¶ 8; Notes of Investigation, Exhibit G. Roberts described these incidents as follows: "He often touched me when he saw me, either while I was sitting at my desk or walking in the hallway. He would put his arm around my shoulders. He put his arm around my shoulders approximately seven or eight times. I told Mr. Tucker more than once to stop touching me. . . . At first, I thought Mr. Tucker was just being friendly, but after I asked him to stop several times, and he didn't, I became upset. Mr. Tucker also made inappropriate comments to me, one time stating that we would have 'fun' if the 'two of us got together'. I took that as a sexual advance." Affidavit of Kellie Roberts, ¶¶ 6, 7.

Most recently, he had come into her office, while she was seated at her desk, spoken to her and "touched" her back in a manner she found to be particularly offensive. Blob Decl., ¶ 10; Exhibit G. According to Roberts: "I don't remember the exact date of the incident that caused me to blow up at Mr. Tucker, but it was sometime during the week of March 31, 2008, and it happened after lunch, sometime in the afternoon. I was seated at my desk, registering patients. Instead of picking up the paperwork for his next patient from the bin, Mr. Tucker came back into the office and stood over the desk where I was seated. He then leaned over me, put his arm across my back

---

(cont.) workplace environment which emphasizes the dignity and respect of all individuals in the Jefferson community. As an integral part of that commitment, sexual harassment in any form or context will not be tolerated. If you have any questions about the University's policy, or wish advice on how to deal with a specific sexual harassment concern, speak with your supervisor or contact the Office of Employee Relations." Exhibit A to Affidavit of Randy McLaughlin, Manager, Employee Relations, Department of Human Resources for defendant.

and started rubbing my shoulders with his hand." Roberts Affidavit, ¶ 8. Roberts became angry and told plaintiff to stop touching "my f—ing back!" Blob Decl., ¶ 11; Exhibit G; Roberts Affidavit, ¶ 9. Roberts also reported that plaintiff had approached two other female employees and made seemingly sexually inappropriate comments (calling one woman "sexy and single" and making slurping noises while looking at another woman's chest). Blob Decl., ¶ 9.

On April 7, 2008, Blob interviewed witnesses identified by Roberts. Id., ¶ 13. Enid Bosfield-Holland confirmed having overheard the latest incident involving Roberts and said she saw plaintiff touch other women in the same manner. Id., 14-15. Jimmie Burroughs said he heard Roberts tell plaintiff to stop touching her. Id., 16. Germaine Bolger also said that on previous occasions, she heard Roberts ask plaintiff not to touch her. Id., 17. All of these witnesses are African-American. Defendant's reply at 4.

Later that day, Blob attempted to interview plaintiff to obtain his explanation, but found out from plaintiff's supervisor that plaintiff had not been at work since April 3, 2008.[5] Unable to reach plaintiff, Blob turned over the results of his investigation to Human Resources. Id., 21. Human resources contacted plaintiff and asked him to attend a meeting to discuss the incident. Tucker N.T., at 88.

On April 14, 2008, plaintiff met with Randy McLaughlin, Manager of Employee Relations, and Linda Mitchell, Manager of Placement and Manager of JeffTemps. Tucker N.T., at 88, 117-

---

[5] Plaintiff stated at deposition that he believed he had been terminated on April 3 when he picked up his paycheck, which explained his absence on April 4 and 7. Tucker N.T. 85, 101. However, it is undisputed that Roberts did not contact Blob until April 4, thereby prompting the investigation. Blob Decl.

4

18; McLaughlin Notes, Exhibit H. Plaintiff admitted the touching incident, saying he was merely being friendly, and denied Roberts had told him not to touch her. Tucker N.T., at 80, 119-20. He asked that Human Resources contact witnesses who would corroborate his version of the incident - Germaine Bolger and Enid Bosfield-Holland.[6] Following the meeting, plaintiff was terminated for "conduct" in violation of the Hospital's and JeffTemps' policies. Service Standards, Exhibit B; Termination Paperwork, Exhibit I; McLaughlin Affidavit, ¶ 11 ("As a result of Mr. Tucker's inappropriate behavior, his temporary employment was terminated in accordance with the policies contained in the Guide and in the Service Standards.")

Plaintiff asserts that his employment termination constituted disparate treatment because of his race. Amended complaint, ¶ 25. The elements of a disparate treatment claim are the same under Title VII and 42 U.S.C. § 1981. Under the familiar McDonnell Douglas paradigm, plaintiff must first establish a prima facie discrimination claim. Roberts v. Planned Building Sys., 2009 WL 367542, *4 (E.D. Pa., Feb. 13, 2009), citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If plaintiff succeeds, the burden shifts to the employer "to articulate some legitimate nondiscriminatory reason for the employee's rejection." McDonnell Douglas, 411 U.S. at 802. If the employer is able to do so, the burden shifts back to plaintiff "to prove by a preponderance of the evidence that the reasons asserted by the employer were pretext for discrimination." Id. at 804.

---

[6] The record does not reflect that Human Resources contacted these witnesses, but, in any event, they had already been interviewed by Blob and, at that time, had corroborated Roberts' version of the incident.

Defendant's position is that plaintiff has not shown a prima facie claim of discrimination. The elements of a prima facie discrimination claim are: (1) plaintiff is a member of a protected class; (2) plaintiff was qualified for his position; (3) plaintiff was terminated; and (4) the circumstances of the termination give rise to an inference of discrimination. Jones v. United Parcel Serv., 214 F.3d 402, 407 (3d Cir. 2000). Defendant concedes the first and third elements. The second element - that plaintiff was qualified for his position - is established by plaintiff's favorable performance reviews, attached to defendant's motion as Exhibits C and E.

As to the fourth element - that the circumstances of plaintiff's termination give rise to an inference of discrimination: as defendant contends, "plaintiff's subjective belief that race played a role in an employment decision is not, alone, sufficient to establish an inference of discrimination." Wilson v. Blockbuster, 571 F.Supp.2d 641, 647 (E.D. Pa. 2008), citing Jones, supra. Instead, plaintiff "must show that [defendant] treated [him] less favorably than similarly situated employees who were not in [his] protected class." Johnson v. St. Luke's Hosp., 307 Fed.Appx. 670, 672 (3d Cir. 2009), citing Doe v. CARS Protection Plus, Inc., 527 F.3d 358, 366 (3d Cir. 2008). Additionally, he must demonstrate a causal nexus between the disparate treatment and defendant's decision to terminate his employment. Sarullo v. United States Postal Serv., 352 F.3d 789, 798 (3d Cir. 2003).

Plaintiff's argument in this regard is as follows: At deposition, plaintiff testified that he was terminated without the chance to confront his accuser, that defendant accepted the word of a white woman over his, that he was a licensed professional, and that a white person would not have been

fired under the circumstances presented. Tucker N.T., at 52, 54, 56. Defendant's response is that plaintiff received ample opportunity to be heard and that plaintiff is the only individual to have been investigated for sexual harassment in the department in which plaintiff was employed. Blob Decl., ¶ 22.

That plaintiff's conduct was not consented to and was sexual in nature and constituted sexual harassment is amply substantiated by Roberts' testimony and the statements of witnesses.

Plaintiff proposes a "mixed motive" analysis. "A 'mixed-motive' theory requires evidence 'so revealing of discriminatory animus that it is not necessary to rely on the presumption from the prima facie case to shift the burden of production." Day v. Zimmerman, 2009 WL 5178013, *2 n.8 (E.D. Pa., Dec. 28, 2009) (citation omitted). Plaintiff's proffer is simply that Roberts is white, that Blob turned over his investigative materials to Human Resources without interviewing plaintiff, and plaintiff's own belief that his termination was the result of discrimination. His theory is refuted by the black witnesses whom he had relied on to support his version of the facts. See also Jackson v. Bob Evans, 2006 WL 3814099, at *7 (W.D. Pa., filed Dec. 22, 2006)(in race discrimination case arising from termination for sexual harassment, mere fact that plaintiff and his accuser are of different races does not support inference of discrimination.).

An order accompanies this memorandum.

BY THE COURT:

/s/ Edmund V. Ludwig
Edmund V. Ludwig, J.